Good morning, and may it please the court. My name is Tim Guerin, and I represent in this action Stephanie Shavatt. She is sued in this case on a in a Bivens theory, a substantive due process claim on the theory that when she participated in the hiring of a federal law enforcement officer that she did so with deliberate indifference. That officer many years later on the job shot and killed Ms. Alvarado, and the plaintiffs alleged that the hiring decision was the moving force behind Ms. Alvarado's death. We believe in this case that there are three fundamental facts clear from the complaint that conclusively refute any allegation of deliberate indifference. The first is, at the time that Officer Tackett was hired, he had no work history remotely comparable to the alleged excessive force he allegedly used here. No instance where he allegedly was responsible for the death of any suspect, no instance where he allegedly used deadly force, no instance where he allegedly even displayed a firearm. Secondly, the incident at issue here occurred nine years after the most recent alleged incident of misconduct in Officer Tackett's background, and over six years after he was hired as a federal law enforcement officer. Can I ask you one question about his record prior to getting hired? So there was some incident about a hotel room and drugs, and it seems like there was a charge that he had put people's lives at risk, but was it not a violent episode? Can you explain what happened in that episode? It was not a violent episode. It was a stop of a car. The driver did not have identification. The driver said the identification was back in the hotel room. They took him back to the hotel room because he said he was willing to go and let them come in and get the identification. There was some danger in that they supposedly did not handcuff him on the trip back to the hotel room, so the extent to which that there was a danger, they put themselves at danger. But this was not in any way comparable to what's alleged here. And then the third fundamental fact that's important here is that this is a single incident hiring case. There's no allegation that Ms. Shavatt, in any circumstance, ever hired anyone else who engaged in any conduct remotely similar to this or even anybody who ever violated anyone's constitutional rights under any circumstances whatsoever. Was there a discovery on that? There was no discovery, but we're looking at the complaint, and you have to put forward a case for deliberate indifference on the face of the complaint, and it simply doesn't exist there. What do we do with her disregard of the regulation that requires referral of this kind of case to OPM before making the hiring decision? Well, she had no disregard. She did not report it, but she was not the person who made the hiring decision. She was in the hiring chain. It only makes sense that people down the chain in reviewing will make a recommendation as to whether somebody should be hired or not. But you can't characterize a recommendation that I think this person should be hired as recommending that the person should be hired without getting appropriate authority. That is the hiring official going forward and getting appropriate authority. So, no, I don't believe she violated the regulation. On top of that, the Supreme Court made very clear in the Davis case, Davis v. Scheer, that a violation of a regulation will not deprive an agent of their qualified immunity. You have to show a violation of the Constitution. You have to show deliberate indifference. For those reasons, we believe that the court erred in failing to dismiss the case on qualified immunity grounds. Qualified immunity protects agents unless they violate a clearly established constitutional right. That's one so thoroughly developed and consistently recognized as to be indisputable. The Supreme Court very recently in San Francisco v. Sheehan emphasized that this is a truly demanding standard of liability. It's intended to protect all but the plainly incompetent or those who knowingly violate the law. In order to show a clearly established claim, it's normally necessary to point to cases involving parallel or at least highly analogous factual circumstances. It's not enough, as a general matter, simply to point to legal principles that were developed in unrelated factual circumstances. You must show that the constitutional right and the contours of the right have been defined in truly comparable factual circumstances. So we usually start talking about whether there were cases clearly establishing the right. In cases where we're worried there may be a violation of the right. But I thought the thrust of your argument was really that there was no violation here at all, because the work history didn't show this kind of behavior before, and that's what Brown requires. Well, sure, but the qualified immunity is a two-step test. First, it violates the Constitution, and if you find a constitutional violation, was that violation clearly established? So we believe it does not show a constitutional violation. Is your argument here that the alleged constitutional violation is being defined by the district court at too high a level of generality to meet the Supreme Court's test? Absolutely, for a number of reasons. You take the first issue, and that is this issue of no work history comparable to this circumstance. The plaintiffs admit in this case that the shooting and killing in this case was not predictable. What they say is that there was a history of unlawful detentions, and because they allege that this shooting and killing occurred in the attempt to accomplish an unlawful detention, that the hiring official, Ms. Shavatt, is liable under fruit-of-the-poisonous-tree theory. The problem with that is that there's nothing to support that in a case law. The Supreme Court's seminal decision on hiring cases in Brown, in fact, precludes it, because in Brown the court said there may be circumstances, rare circumstances, truly egregious circumstances, where you can recognize a hiring claim. But to do so, you must satisfy an extremely high level of culpability by the hiring official, amongst the highest that exist anywhere in the civil law. It's not enough simply to say it was predictable or foreseeable at the time of the hiring that the person might go out and violate somebody's constitutional rights in some circumstance. You must show it's highly likely the person will engage in the particular violation alleged in the case. You must show that the injury was so predictable at the time of the hiring that the hiring decision and the injury are so immediately and directly and inextricably connected that the injury can reasonably be characterized as the plainly obvious consequence of the hiring decision. When you admit up front that this injury was not predictable, then your claim is precluded. It's simply not clearly established in the case law. You add to that, we're talking about a person who was on the job for over six years at the time of the injury. I don't understand how that part is relevant under Brown, because Brown talks about what you knew based on the prior work record at the time of hiring, and the issue is the hiring. So how does the six years after make a difference? Because deliberate indifference is both a subjective test and an objective test. What the court said was the injury must be the plainly obvious consequence of the hiring decision. The problem is that when you have six years, nobody can predict objectively what's going to happen in six years. That's simply too far afield from the case. The plaintiffs have identified, makes it too attenuated by definition, as an objective matter. The plaintiffs have identified eight cases in their pleadings that they say show a clearly established claim, that their hiring claim is clearly established. Four of those cases involved injuries that took place almost immediately when the person was injured. Two took place within a year of the hiring decision, and the other two are basically remands back to the district court without a discussion of that. There is nothing approaching a six-year period. So, Mr. Garron, is the argument similar to what we sometimes hear in criminal sentencing cases where we're trying to predict recidivism based on a prior conviction, that if the conviction is just too old and occurred too many years ago, that that can't serve as a reliable predictor that this particular defendant is going to repeat the offense? Is that a similar analogy? I don't think it's similar. I think the better analogy is this. The plaintiffs have characterized this as a causation issue, but the Supreme Court in Brown made it absolutely clear it's not a but-for or a factual causation issue. If it's a causation issue at all, it's a proximate cause type causation issue. You have to show in the common law context, common law tort, proximate causes foreseeability that some injury will occur. But this is like a super proximate cause. You have to show it's highly likely the particular injury would occur. So it's more akin, I believe, to a proximate cause analysis, and a proximate cause analysis is appropriate for resolution and a motion to dismiss. So there basically is three things wrong with this. We can bring a claim that's based on an injury that took place over six years. The first thing is the seminal case, Brown, which they rely on to say it's clearly established, was a case where the injury took place within two weeks or weeks of the person being hired. The court in Brown did not discuss an ex-ante kind of analysis, did not rely in any sense on an ex-ante kind of analysis. This was not an issue in the case at all. To say that Brown clearly establishes for qualified immunity purposes an ex-ante analysis is to make the precise error the Supreme Court has warned against over and over again, most recently in San Francisco v. Sheehan, and that is to read a case for qualified immunity purposes far outside the factual parameters of the case and say it establishes things that were not at issue in that case. You cannot do that. The second problem is that if Brown indicates anything with respect to ex-ante, it indicates the opposite, because this notion of a plainly obvious consequence test, that the injury has to be directly and immediately connected to the hiring decision, by definition that indicates that the time period once the person is hired is relevant to determination, because the longer it takes for the injury to take place, the less direct and immediate it is, again, by definition. And then the third thing, and I think this is very important, if you look at substantive due process claims as a general matter and how they've been treated by the courts of appeals, in the rare cases where courts have recognized these kinds of claims, the court has said there's one principle that almost always applies, and that is these claims are not open-ended. These claims are limited in range and duration. That's a common phrase used. Or they have to be close in time and succession. There is no case law that recognizes what the plaintiffs are asking for, and that is basically an open-ended claim, that if a hiring official hires someone and that person stays on the job for 30 years and then commits a constitutional violation, the hiring official, even if the hiring official is long since retired or long since dead, under that theory could be sued. There is no case law to support that. Now, the third... Do you want to save any time for rebuttal? I'm going to burn it all up. All right. Go for it. The third point I want to make is about this being a single-incident case. The plaintiffs argue that well, a single-incident case, that only applies... That's a Monell context, and you don't need to show a pattern in the Bivens context. But what the court said really in Brown is that it's important to show a pattern because a pattern shows deliberate indifference. It's almost impossible to predict what somebody's going to do. No, it's a pattern shows a policy on behalf of the county or municipal entity, right? But you didn't need a pattern in this particular case because... Well, that's because we're not in a Monell context. I mean, those cases are all about Monell. But I'm talking about Brown. Brown was a Monell case, but Brown required the pattern. But that Brown needed no pattern to show that it was an act by the city. They admitted that the sheriff was a decision-making official for the city and his action in hiring somebody was an act of the city. What Brown was focusing on was not that, but was focusing on the issue of culpability. And you can't show culpability without showing a pattern because a pattern shows the official had some feedback that supports the idea that it was conscious disregard. And without that feedback... There's no way that someone could have done a single thing so bad that it would be unreasonable to hire them as an officer? No, I would not say that. What I'm saying is that what Brown indicates is as a normal matter, you have to show a pattern. It's a general matter. You could come up with a case so egregious, so terrible, that the court might say no pattern was necessary. But the general rule is you need a pattern. And this case would fall within any kind of general rule. So basically our position is this. There are three reasons why qualified immunity is appropriate here. No history similar to this in the agent's background. Too long on the job, much too attenuated claim, over six years on the job, and the hiring official had no pattern to support an inference of deliberate indifference in this case. Each of these things, standing alone, is sufficient for qualified immunity. But when you consider them collectively, it's a compelling case for qualified immunity. Thank you very much. Mr. Aredale, good morning. Good morning, Your Honor. May it please the court. I need to point out first that we are here on a qualified immunity plea from a 12B6 motion, which was denied. There has been no discovery in the case. The issue under Iqbal and under general 12B6 jurisprudence is, has there been a plausible showing that we are entitled to relief? We're being held to a standard at Supreme Court level jurisprudence on a 12B6 motion. Secondly, I'd like to address the three points that counsel made that give you the factual specifics that are so critical. In that regard, I need to clarify that the complaint is alleged in their excerpt of record at pages 114 to 159. Counsel takes some liberties, elegant liberties, mind, with the factual record. We have not alleged that the killing was a clearly foreseeable result. What we have alleged is that Packett's conduct in engaging in rousting someone without legal authority, improperly detaining or attempting to detain them, and then lying to them regarding the course of his authority and engaging in physical abuse, physical abuse related to not letting her leave, physical abuse in regard to instructing his co-agent to smash her window, that that physical abuse was also consistent. In other words... I misunderstood your briefing, but I thought you were alleging illegal detention in excessive force. And the problem with the facts as alleged under the case law is there is no detention until the deadly force is actually utilized because she had not yet submitted to a show of official action. That's right. The district court judge went off on Hodari, but I don't think whether there was a technical detention under Hodari or an attempted wrongful detention for purposes of looking at the behavior is dispositive. It's a clever argument, and I appreciate your skill. I attribute cleverness to the other side. No, no, no, no. We've known one another for a long time now. You're basically trying to define a constitutional violation through the conduct that led up to the seizure, and what case do you have to support that theory? I'm not aware of a case that says you can be liable for a civil rights violation for rousting somebody or for falsely declaring that you have a legal right to be there to detain them. Give me a case here. Well, I think if you look at Brown itself, it speaks of the kind of conduct not in, in other words, what is the right that is being asserted here. It is the constitutional right of Ms. Tachikina, third party, to avoid being subjected to the consequences from the deliberate indifference of a hiring official to the high degree of likelihood that this conduct will occur. In other words, Brown does not. Which conduct are you pointing to? You have to show conduct that violated a right. Yes. So what is the conduct that violated the right? The conduct that violated. Well, let me just say this. I don't know that we are necessarily bound. We have the right to defend the judgment in court below on any rationale whether or not it was raised in the court below. We disagreed with the district court judges finding on a, and it doesn't technically apply to us except in the way, in this collateral argument that they've made. They cut loose one of the co-defendants, Mr. Rosen, saying there was no technical detention because the judge said, the way I read your complaint, there was never any submission to authority and therefore no detention under Hodari D. Why is that right? I mean, she wasn't submitted. She was in the act of leaving. Now, I may be guilty in this regard of being conclusory in the pleading. We alleged that there was a detention. That is to say, there was a period of time before she left. But the case law doesn't support that. That's the problem I'm having with your argument. The case law really does require an actual submission to authority. And sadly, in this case, the submission came when 10 or however many rounds were fired and it killed her and stopped her leaving. That's when the detention occurred. No, I appreciate that. But I am saying that given, and counsel is correct, the Supreme Court said in this kind of a case, you have to have a case that meets high burdens of culpability and causation. And so on the culpability issue, we think we have that in spades because of incident after incident after incident. Until you tell us what conduct you think is repeating, we don't know if that's true. So what conduct are you saying is the violation? The conduct that is repeating is the actual or attempted violation of a person's constitutional rights involving. Just a minute now. I want to focus on that. Your case seems to be that an officer can violate a constitutional right by an attempted detention. Isn't that what you're saying? What I'm saying is that the constitutional right that is involved, that the officer's conduct, if it causes harm, need not necessarily violate any constitutional right. That the constitutional right that is at. Well, it has to be actionable under 1983. No, no. What I'm saying is that the constitutional right is the constitutional right that you have a right not to be subjected to deliberate indifference that will cause harm. In other words, it's the act of the hiring official that is of essence here, not whether the ultimate harm, so long it was foreseeable, is the result of a technical constitutional violation by the officer. Brown says that it has to have been the plainly obvious consequence that the decision to hire would deprive the third party of a federally protected right. So it's the hiring has to have the consequence of depriving the federally protected right. So what's the deprivation of the federally protected right? That the officers were, that this officer engaged in. That this officer engaged in. Let me talk to you in that regard and show you the pattern. There are multiple instances in which this officer engaged in the following conduct. Illegally approaching people, detaining them. What did he do to the decedent here? What did he do to the decedent? What was the violation of the federally protected right that could be predicted? She was entitled to leave. That's undisputed. She was entitled to leave the area. He refused to allow her to leave the area. When she walked away, he followed after her. When she got into her car, he stood in front of the car, impeding her freedom of movement. And in that regard, although she stayed there and she tried to get around him, we believe that at least for the moment that she remained, and we say it's up to a minute. So if that's all you can do to get to here is something he did that arguably violated a right that could be predicted, are you seeking nominal damages? No. Well, the answer is whether they're nominal or not is a matter that can be later determined. But certainly we are entitled to at least nominal damages, and the fact that they are only nominal damages does not mean that we're not permitted to go forward. Does that kind of nominal damage even survive a death? I mean, can the estate even seek that kind of? Yes, yes, because you look under Bivens to the law of the state, and there is a survivorship because she did live for at least some time after the death that bullets hit her. But let me just – Can you explain that? I thought you were not talking about the bullets and you were only talking about the moment where he's standing in front of her car. No, no, but you're asking me ultimately can you assert a constitutional tort or some tort that she sustained even though she died, and the answer is yes, under the survivorship. So you would parse the claim against the hiring officer of all the conduct up to the point where deadly force was employed. You would concede that there's not enough under Brown to show the link to the use of excessive force, but that's a separate claim that you have against the officer who employed it. Yes, yes. Is that what you're saying? It is that. Actually, I wanted to be a little deliberately vague on that because I think that that's ultimately a determination that should initially be made by the trial judge in the court below. Tell me why this language in the Brown opinion does not refute your theory, and I'm reading from page 410 and 411 of Brown, 520 U.S. I quote, A lack of scrutiny may increase the likelihood that an unfit officer will be hired and that the unfit officer will, when placed in a particular position, to affect the rights of citizens, act improperly, but that is only a generalized showing of risk. The fact that inadequate scrutiny of an applicant's background would make a violation of rights more likely cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation. That's right. That's why in our pleadings, we were very careful to try to break down the conduct. In other words, I didn't look at the specific definition of whether there was a technical Fourth Amendment seizure alone. We looked at the specific conduct. What did he do with respect to Mr. Bertucci? He jumped over his house. He illegally detained him. He put handcuffs on him, and then he took him out and put him in a car without air conditioning in the Imperial Valley, and the man was very, very sick, had to kick out the window, and then he took Bertucci to the jail, and while the man is sweating, he drinks a cold drink in front of him. We say that involves misconduct, physical mistreatment, lying, and detention, or in our case, we're saying the pattern of conduct, detention or attempted detention. Using that as an example, would you then say Imperial County faces Brown liability for retaining Tackett in its employ as a deputy sheriff because that wasn't the first similar incident that it knew about? I would not because in this regard, counsel is talking about single incidents in another area, but there are multiple incidents here. In other words, he has also the Lackey case, and it's exactly the same pattern of conduct that occurred in this case. He goes to a house. He shines the light in the middle of the night. The man who is in the house, who, it turns out, is innocent of any wrongdoing, comes out, but because he's in bed and he gets out of bed, he only has some pants on, and this time it's winter and it's freezing cold, and he's detained there, wrongfully detained. He asks to go into his house because he's freezing. No, you're staying here. When he attempts to go into his house, Tackett physically intervenes and throttles him, and then he arrests him, and then during all of this, he's lying about the extent of his authority and what Lackey is legally required to do. Then there is another case also involving a wrongful seizure. He stops a driver. The driver says, I don't have my license. He said, well, you have to come with me. He brings him into his hotel room, detains him there. So all of those are actual seizures, and I'm not sure you have an actual seizure here. You have some kind of attempted seizure, like Judge Tsushima was asking. What I wanted to say in this regard is we believe, if you look at the complaint, we have alleged an actual seizure. Now, I appreciate that the district court judge, on his reading of the complaint, said no, because of Hodari D., this conduct of Tackett's, which is the precisely same conduct, the same conduct, that was involved in all of the other three specific instances. But in all of the other instances, the person who was trying to be detained was detained and stopped, and that never happened here. Yes, and in this case, the district court judge said, although I'm finding there was no detention at this point under Hodari D., what happened is the events occurred, and ultimately there was a detention via bullet. Right, but so if the detention is via bullet, you don't have the predictability. But if you look only prior to that, I don't see where the detention is. So we're kind of going in a circle. I don't want to go into a circle. I want to go right to the heart of it, which is to say, we alleged in the complaint that there was an actual detention. So where? At what moment? What did you allege that you think is the actual detention? We say it was in a conclusory fashion, unfortunately, but we said she was stopped, she was detained, she remained there, and then after having been detained for a period of time, she started to leave. I thought she walked out when they tried to ask her for identification and that she just kept walking to her car while they followed her. I'm saying she was, yes, she was detained in the car. In other words, what happened when she got into... they broke the window and she drove away. So at what point did she submit to authority under our case law? It was not alleged, but she remained there for a short period of time before she attempted to leave. It wasn't very long. It was not very long. So what are you saying, you can construe that as a detention and then the detention was broken when she started the car? Correct. Something like that? In other words, yes, when she gets in the car and he stands in front of the car and the other man is at the window with his gun out, that's a detention. She remained there for some period of time. Now, then she left. It couldn't have been very long if he jumped on the hood of her car as she drove off. It was not very long. What's your understanding of how long it was? It was a matter of 30 seconds where she was detained, where she wasn't moving, where she was submitting to them, and then given Tackett standing there and given her being threatened by the man at the side of the car and ultimately a second or two, just before she left, he smashed the window, we say that that was a detention. Now, she left, and that leaving was certainly not a submission to detention. But our detention offices have never recognized that theory. I mean, I'm thinking of the cases at the border where there's an attempt to stop the person, and then the person either physically resists or actually runs, and we've declared there was no submission to authority, therefore no detention. Well, I would say this, Judge Tolman, I appreciate that. In other words, if there is no initial submission, there's no initial submission to detention. Well, I'm not sure where you draw that line. I mean, as I say, you're really pretty finely parsing the law of detention. And I'm not sure the cases support your theory. I appreciate that. But here's what else I'm here for. I'm not only here speaking on behalf of a dead woman and her family. I'm also speaking on behalf of a decent law enforcement agency that tried to do the right thing and got sued for it. Here, the Imperial County. That was a very professional investigation. It was extraordinarily professional, and that's why what happened here was so unnecessary. Because again and again and again. But the question is not whether this officer was unfit for hire by the Border Patrol. That's what the argument was that was made to the Supreme Court in Brown. I don't think anybody's disagreeing with that premise. The question is whether or not the hiring official had sufficient information to lead her to believe that it was highly likely or whatever that standard is. She had access to all of the things we laid out. Let me ask a follow-up question to what Judge Solomon just expressed. And this is the argument, it's new to me, raised by your opponent today. And to me, it's almost like a proximate cause argument. In other words, that the six-year delay or time passage between the hiring and the incident here, five or six years, is so attenuated as almost not to be proximate cause. It's that kind of argument, isn't it? What's your response to that, that the six-year delay is an important factor? Three things. First of all, there is absolutely no case law support for that argument. The argument goes the other way around, what the cases say before the hiring. No case law? Well, what's the best case that you can cite to us that shows the decision made on X date can be a proximate cause of something that happens five or six years later? There is no analysis, no explicit reference to time after the hiring. The only analysis or discussion of time is if the misconduct the person engaged in predated the decision to hire. There's discussion saying, well, if the wrongdoing occurred 15 or 20 years ago with no repetition, then it's attenuated. Then you don't have causation because too much time has passed. But with respect to this issue they raise, and I admit that it is a logical and, if I may use a word, clever argument, but it's completely without any support in the case law. In other words, they look to the time of the hiring and there is no analysis. Now, Judge Toshiba, I do say that at some point, if it's an excessive case, in other words, a guy has been hired, no misconduct for a decade or two, and then before he retires does something wrong. At that point, as a factual matter, there's attenuation. But could we declare as a matter of law in your hypothetical that there would be no claim for unlawful hiring if it was that old? The court has enormous powers, and I would never say that you couldn't do that if it's based on logic. Well, as a matter of law. As a matter of law. Or is your position a jury still has to decide whether to take it? No, I think there are factual cases so clear and extreme that the court could say, look, if it were this, then as a matter of law it can be done. All I'm saying is, in the case law, it has never been done. And in fact, and there's a second good reason for that, which is we don't know what he was doing between the time he was hired and the time he killed this lady as a result of his attempted detention. You're about five and a half minutes over, so I think we're going to have to end it here. I'll stop. Okay. I need the panel's help because this is a case in which, had the federal officer done her duty, this never would have happened. Thank you, Mr. Iredale. Your time has up. We understand your argument. Counsel, I let Mr. Iredale go over, and notwithstanding my earlier invitation to save time, I'm going to give you a couple minutes on rebuttal. Your Honor, I don't have a lot to add. The statement was that there's no case that has dealt with the time period. Well, the Fourth Circuit dealt with the time period in a very similar time period in the Wellham case, which I've cited, and that involved a 10-year period, and the court said that's too attenuated. This is a nine-year period here between the alleged misconduct. So that's right in the ballpark of the same. I would also point out the Martinez case. That's a Supreme Court decision dealing with a parole decision where the parolee, five months later, killed somebody, killed a child, and the court said five months was too remote from the decision to support a subject of due process kind of theory. I would point out the Urey case in the Third Circuit dealing with a four-year period, and the court in the city of Erie said that was too long. So I think there are cases, and I think you can also discern, again, from the statement of Brown itself that the injury and the hiring decision have to be so immediately and directly linked as to show it's a plainly obvious consequence. That inherently involves consideration of the time period. That's all I have. All right. Thank you both for a very helpful argument. The case just argued is submitted. We'll get you an answer as soon as we can.
judges: Tashima, Tallman, Friedland